IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Kisha Marie Davis, | ) | |
| | ) | Civil Action No. 2:14-cv-03043-RMG-MGB |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Medical University of | ) | |
| South Carolina | ) | |
| Physicians, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant Medical University of South Carolina Physician's Motion to Dismiss Plaintiff's Complaint (Dkt. No. 18) and Amended Motion to Dismiss Plaintiff's Complaint (Dkt. No. 27) ("2015 Lawsuit"). The Plaintiff, Kisha Marie Davis, proceeding *pro se*, filed a previous employment action against Defendant on September 18, 2013, *see Davis v. MUSC-Physicians*, Civ. A. No. 2:13-cv-2544-WWD; she filed another Complaint on August 6, 2014, *see Davis v. MUSC-Physicians*, Civ. A. No. 2:14-cv-3152-MGB. By Order dated November 4, 2014, the two actions were consolidated. *Davis v. MUSC-Physicians*, Civ. A. No. 2:14-cv-3152-MGB. ("2014 Lawsuit.) On February 11, 2015, upon consent of both parties, the 2014 Lawsuit was referred to the undersigned for final disposition (2014 Lawsuit, Dkt. No. 65.). On March 29, 2016, the undersigned granted summary judgment to the Defendant and denied summary judgment to the Plaintiff in the 2014 Lawsuit. The order granting summary judgment to the Defendant is on appeal at this time to the Fourth Circuit Court of Appeals.

1

On August 3, 2015, the Plaintiff filed the instant lawsuit against the same Defendant, MUSC-Physicians ("MUSC"), for violations of the Family and Medical Leave Act and the American with Disabilities Act ("ADA"), arising out of the same set of facts. (2015 Lawsuit, Dkt. No. 1.) On October 23, 2015, the Defendant filed a Motion to Dismiss on the grounds that this lawsuit is duplicative of the 2014 Lawsuit. (2015 Lawsuit, Dkt. No. 18.) On October 26, 2015, an order pursuant to *Roseboro v. Garrison* was filed in which the court advised the Plaintiff of the dismissal procedures and the possible consequences if she failed to respond adequately to the Defendant's motion. (2015 Lawsuit, Dkt. No. 22.)[1] On December 2, 2015, the Plaintiff filed a Response in Opposition to the Motion to Dismiss. (2015 Lawsuit, Dkt. No. 26.) On June 10, 2016, the Defendant filed an Amended Motion to Dismiss on the additional ground of *res judicata*. (2015 Lawsuit, Dkt. No. 27.) On June 13, 2016, another order pursuant to *Roseboro v. Garrison* was filed in light of the Amended Motion to Dismiss. (2015 Lawsuit, Dkt. No. 28.) On July 19, 2016, the Plaintiff filed a Response to the Amended Motion to Dismiss.[2] (2015 Lawsuit, Dkt. No. 30.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

---

[1] On October 30, 2015, the Plaintiff filed a Motion to Consolidate Cases, requesting to consolidate the 2014 and 2015 Lawsuits because "[a]ll of the evidence overlap[s]". (2015 Lawsuit, Dkt. No. 24 at 5 of 7.) On November 12, 2015, the Defendant filed a Response in Opposition to the Motion to Consolidate. (2015 Lawsuit, Dkt. No. 25.) By separate text order, (2015 Lawsuit, Dkt. No. 31), the Court denied the Motion to Consolidate because the Court issued a final ruling on summary judgment in the 2014 Lawsuit on March 29, 2016 (2014 Lawsuit, Dkt. No. 94).

[2] The Court notes that the Plaintiff filed the same document as her responses to the Defendant's Motion to Dismiss Complaint and Amended Motion to Dismiss Complaint and will be referenced herein in the singular as "Response in Opposition".

Having reviewed the parties' submissions and the applicable law, the undersigned recommends that the Defendant's Motion to Dismiss/Amended Motion to Dismiss be granted.

## 1. FACTUAL AND PROCEDURAL BACKGROUND

a. 2014 Lawsuit

The Plaintiff's 2014 lawsuit alleged that while she was employed with the Defendant, she was hired as a "Coder 1" in August or September of 2011. (2014 Lawsuit, Dkt. No. 32 at 3 of 5; Dkt. No. 1 at 4 of 12.) She alleged that she was a certified coder and that she had "been waiting for a surgical coder position, Pay Band 4, to become available." (2014 Lawsuit, Dkt. No. 32 at 3 of 5.) According to Plaintiff, she was "contacted for a peer review which consisted of 3 white coders, peers, non-management." (Id.) Plaintiff stated:

> During this peer review, each peer had a copy of my application with all info to include my birth date, social security number, past salaries, information beyond that contained on a resume. After the peers questioned my abilities, they stated that they knew me, Sherry Blackwell & Shawn Whitney, but they wanted to see me. Prior to the peer review we had an ongoing electronic relationship. Very friendly. After they saw me, no more contacts were made. The relationship we had disappeared.

(2014 Lawsuit, Dkt. No. 32 at 3-4 of 5 (emphasis in original).) Plaintiff alleged that two of the members of the peer review team "stated that they just wanted to see [Plaintiff], and started making reference to how pretty [Plaintiff] was and how [Plaintiff] always look[ed] so nice." (2014 Lawsuit, Dkt. No. 1 at 4 of 12.) According to Plaintiff, as she was leaving, she "heard another voice asking, 'Is that her,'" and although Plaintiff "felt really awkward," she did not look back. (2014 Lawsuit, Dkt. No. 1 at 4 of 12.)

Plaintiff alleged that approximately two weeks later, she "withdrew [her] application when [she] realized [she] was not going to be interviewed." (2014 Lawsuit, Dkt. No. 36-1 at 6 of 137.) Plaintiff stated she withdrew her application because she "just couldn't stand to see that [she] was not selected for even an interview for a job [she] was well qualified to do." (2014

3

Lawsuit, Dkt. No. 1 at 5 of 12.) After this peer review process, Plaintiff alleged, "the coders no longer emailed [her] for assistance or help of any kind." (2014 Lawsuit, Dkt. No. 1 at 5 of 24.)

Plaintiff alleged that she later learned "that a younger, newly certified, white coder, [her] subordinate from under [her] leadership was offered the position." (2014 Lawsuit, Dkt. No. 32 at 4 of 5.) Plaintiff asserted that she never received an interview, even though the employee manual indicates that "internal candidates should receive an interview, and follow up as to why, or why not hired." (*Id*.) According to Plaintiff, during a meeting with HR:

> I then asked what made my subordinate, newly credentialed coder, less qualified than me such an exceptional candidate rendering me unworthy of at least an interview. No answer was given. Brad Evans, HR director at that time promised he would get to the bottom of it. He resigned suddenly. No explanation was ever given as stated protocol indicates per the employee manual. I am a minority, black female over age 40.

(*Id*.) Plaintiff alleged she was "crushed" after the "review," and during the December 15, 2011 Christmas party, she "was snubbed and stared at by the coder depart[ment] (the white employees)." (2014 Lawsuit, Dkt. No. 36-1 at 125 of 137.) Plaintiff alleged she went to Nason Medical Center after the Christmas Party because she "thought [she] was having a stroke or heart attack." (*Id*.; *see also* 2014 Lawsuit, Dkt. No. 36-1 at 127-37 of 137.)

In addition to her claim for age and race discrimination, Plaintiff alleged a claim for retaliation, a claim for disability discrimination, and a claim for interference with rights provided by the Family and Medical Leave Act. (See 2014 Lawsuit, Dkt. No. 1-1 at 1-5 of 12.) Plaintiff alleged that in January or February of 2013, Defendant "hired a 50 year old, black lady (Arnetta Atkins)." (2014 Lawsuit, Dkt. No. 1 at 6 of 12.) Plaintiff alleged that in 2013, Ms. Atkins asked Plaintiff if she was interested in a position that Atkins "was trying to create as coding supervisor, but not a coding supervisor," where Plaintiff "would remain a division leader and . . . there [would] be more responsibility, but no additional money." (2014 Lawsuit, Dkt. No. 1 at 6 of 12.)

4

Plaintiff alleged she told Ms. Atkins the next day that, for personal reasons, she could not accept the offer. (2014 Lawsuit, Dkt. No. 1 at 6 of 12.) Although Plaintiff suggested two other individuals for this position, Plaintiff alleged "this job never got posted for anyone to apply." (2014 Lawsuit, Dkt. No. 1 at 6 of 12.) Plaintiff further alleged that Ms. Atkins created a very hostile work environment for her and that she knew that Ms. Atkins was her punishment for filing a complaint with the EEOC. (2014 Lawsuit, Dkt. No. 1 at 6-7 of 12.)

Plaintiff alleged she began seeing a therapist approximately two months later, when she realized she was "having a very difficult time coping with the environment created by Ms. Atkins and still dealing with [her] feelings knowing the coders haven't been contacting [her] for any help anymore after they saw that [she] was black." (2014 Lawsuit, Dkt. No. 1 at 7 of 12.)

Plaintiff alleged that when she had a meeting scheduled with her director on or about May 16, 2013, she never made it because the closer she got to work, the more she began to cry, and she began feeling shortness of breath, chest pain, and dizziness. (2014 Lawsuit, Dkt. No. 1 at 7 of 12.) Plaintiff's doctor "immediately placed [her] on sick leave, started medication and referred [her] to the MUSC Institute of Psychiatry." (2014 Lawsuit, Dkt. No. 1 at 7-8 of 12.) According to the Plaintiff, her psychiatrist "kept [her] on sick leave with (FMLA) in attempt to stabilize and get [her] on the right medication as well as psychotherapy." (2014 Lawsuit, Dkt. No. 1 at 8 of 12.)

Plaintiff alleged that on or about July 25, 2013, the Defendant mailed Plaintiff a letter "stating that [her] FMLA [would] expire on August 8th, 2013, and that [Plaintiff] needed to return to work on or before the expiration of [her] leave unless medically unable to do so." (2014 Lawsuit, Dkt. No. 1 at 8 of 24.) Plaintiff further alleged that on August 8, 2013, she received a letter from the Defendant stating that Plaintiff exhausted her leave on August 7 and that

5

termination was effective August 8. (2014 Lawsuit, Dkt. No. 1 at 9 of 12.) Plaintiff also alleged that on August 8, 2013, she obtained a Physician's Statement from Dr. Potter indicating that she was "unable to perform [her] current duties at [her] current place of employment." (2014 Lawsuit, Dkt. No. 1 at 9 of 12.) According to the Plaintiff, the letter noted that it was "difficult to determine when or if [her] symptoms will improve" and "disclosed [Plaintiff's] conditions of PTSD, Generalized Anxiety Disorder, and panic disorder. . . ." (2014 Lawsuit, Dkt. No. 1 at 9 of 12.) Plaintiff contended she was "denied a reasonable accommodation and terminated on August 8, 2013." (2014 Lawsuit, Dkt. No. 1-1 at 1 of 12.) Plaintiff also alleged she was discriminated against because of her disability. (2014 Lawsuit, Dkt. No. 1-1 at 1 of 12.)

     b. 2015 Lawsuit

While cross-motions for summary judgment on the above claims were pending in the 2014 Lawsuit, the Plaintiff filed the instant Complaint. (2015 Lawsuit, Dkt. No. 1). The statement of the claim is much shorter than the 2014 Lawsuit and focuses on the FMLA claim. The Plaintiff alleges that she was approved for FMLA for her medical condition effective May 16, 2013 and her EEOC complaint was closed on June 24, 2013. (Dkt. No. 1 at 3 of 5.) She cites again to the letters of July and August of 2013 from MUSC about the exhaustion of her FMLA leave on August 8, 2013, as well as an August email firing her effective August 8, 2013. (Dkt. No. 1 at 4 of 5.) She cites the August 8, 2013 letter that changed the FMLA exhaustion date to August 7, 2013. (*Id.*) The Plaintiff alleges that MUSC fired her with at least one day of FMLA remaining, that MUSC avoided its legal obligations, and that she was fired with known mental disabilities with no attempt of reasonable accommodation (*Id.*)

The Plaintiff's requested relief is: 1) an investigation and maximum fine by the Department of Labor for violation of the FMLA and for MUSC avoiding obligations under the

6

ADA; and 2) the maximum award of "punitive, pecuniary & compensatory damages." (2015 Lawsuit, Dkt. No. 1 at 5 of 5.) The Plaintiff states in her Motion to Consolidate that she filed the 2015 Complaint in response to Defendant's Motion for Summary Judgment which argued that it was not clear that the FMLA claims were formally "introduced in my initial filing. To ensure filing of the FMLA violations, to provide clarity, I filed a complaint of FMLA violations in early August 2015 to clear the two year statute." (2015 Lawsuit, Dkt. No. 24 at 4, 5 of 7.) The Plaintiff stated at that "[a]ll of the evidence overlap (sic) and is on file in" the 2014 Lawsuit. (*Id.*)

On March 29, 2016, the Court granted summary judgment to the Defendant on all claims, and denied Plaintiff's Motion for Summary Judgment. (2014 Lawsuit, Dkt. No. 94.) In that final Order, the Court addressed claims for age and race discrimination, retaliation, disability discrimination and the claim for interference with the Plaintiff's FMLA rights and granted Defendant's Motion for Summary Judgment on all claims.

## 2. **LEGAL STANDARD**

Defendant has moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint. On a 12(b)(6) motion, a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "In reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) . . . [a court] must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation

7

of the elements of a cause of action will not do." *Twombly*, 550 U.S. 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

For purposes of a motion to dismiss, the district court must "take all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, while the court must draw all reasonable inferences in favor of the plaintiff, it need not accept the "legal conclusions drawn from the facts, . . . unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Giarratano*, 521 F.3d at 298)).

The court may "properly take judicial notice of matters of public record" in deciding a motion to dismiss. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). This Court may properly take judicial notice of Plaintiff's prior cases. *See Philips*, 572 F.3d at 180 (courts "may properly take judicial notice of matters of public record."); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.' "); *see, e.g.*, *Assa'ad-Faltas v. South Carolina*, Civ. A. No. 3:12-1786-TLW-SVH, 2012 WL 6103204 (D.S.C. Nov. 14, 2012), adopted by 2012 WL 6106421 (D.S.C. Dec. 10, 2012) (a court has "the right to take notice of its own files and records"), *appeal dismissed* (No. 13-1034, 4th Cir., June 26, 2013).

A *pro se* complaint is entitled to liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). *Pro se* complaints are held to a less stringent standard than those drafted by attorneys. *Id.*; *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978). A federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Hughes v. Rowe*, 449 U.S. 5 (1980); *Cruz v. Beto*, 405 U.S. 319

8

(1972). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir.1990). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999), construct a plaintiff's legal arguments for her, *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

### 3.  **DISCUSSION**

The Defendant argues that the 2015 Lawsuit is a duplicate of the 2014 Lawsuit and should be dismissed for reasons of wise judicial administration. (2015 Lawsuit, Dkt. No. 18-1 at 2 of 6.) After this Court granted summary judgment for the Defendant on all grounds in the 2014 Lawsuit, including the FMLA claim and the disability discrimination claim under the ADA, the Defendant also argues that the 2015 Lawsuit is barred by the doctrine of *res judicata*.[3]

A court has the power to dismiss a duplicative lawsuit.

> As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit. *See Colorado River Water Conversation Dist. v. United States*, 424 U.S. 800, 817 (1976) (as between federal district courts, … though no precise rule has evolved, the general principle is to avoid duplicative litigation."); *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir.1991); *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir.1977) (in banc). The complex problems that can arise from multiple

---

[3] In the final Order in the 2014 Lawsuit, the Court ruled that the Plaintiff received all of the FMLA leave to which she was entitled. (2014 Lawsuit, Dkt. No. 94 at 23-24 of 24.) The Court also ruled on the ADA claim that no reasonable accommodation was possible because the undisputed evidence was that the Plaintiff was not able to work at all, in any capacity, during the relevant time. (2014 Lawsuit, Dkt. No. 94 at 19-22 of 24.)

> federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion. *Id*, *See Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236; *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183–84, 72 S.Ct. 219, 96 L.Ed. 200 (1952) (affirming stay of declaratory judgment action on patent's validity in Delaware while patent infringement suit in Illinois proceeded); *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir.1989).… The rule against duplicative litigation is distinct from but related to the doctrines of claim preclusion or *res judicata*…. The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the "comprehensive disposition of litigation." *Kerotest Mfg.*, 342 U.S. at 183, 72 S.Ct. 219. The doctrine is also meant to protect parties from "the vexation of concurrent litigation over the same subject matter." *Adam*, 950 F.2d at 93.

*Curtis v. Citibank*, 226 F.3d 133, 138, 140 (2d Cir. 2000) (finding the trial judge did not abuse his discretion in dismissing claims which were heard or could have been heard in first lawsuit.)

It is clear that the 2015 Lawsuit, for violation of the FMLA and for violation of the ADA, is duplicative of the 2014 Lawsuit, which was adjudicated on the merits in favor of the Defendant. The claims arise out of the same facts as the 2014 Lawsuit. This court recommends dismissal of the 2015 Lawsuit because it is duplicative.

In addition, the undersigned recommends that the 2015 Lawsuit be dismissed because it is barred by *res judicata*. There are two types of preclusion, *res judicata* and collateral estoppel. "Res judicata, or claim preclusion, bars re-litigation of any claims that were or could have been raised in a prior proceeding between the same parties." *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008). Meanwhile, collateral estoppel bars the re-litigation of specific issues actually determined in a prior action. *Id*.

The elements of *res judicata* are: 1) a final judgment on the merits in a prior suit; 2) an identity of the cause of action in both the earlier and the later suit; and 3) an identity of parties or their privies in the two suits. *Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000).[4] It is clear from

---

[4] Because the Plaintiff brought her first suit against the Defendant in federal court, federal rules of *res judicata* apply. *Andrews*, 201 F.3d at 524.

the public record in the two cases and the face of the 2014 and 2015 Complaints that there is identity of cause of action and identity of the parties. Regarding finality, the Fourth Circuit has held that an order granting summary judgment is a final judgment for purposes of *res judicata*. *See Machado v. Davis*, Civ. A. No. 4:11-1758-KDW, 2012 WL 4051123 (D.S.C. Sept. 13, 2012) (citing *Shroup v. Bell & Howell Co.*, 872 F.2d 1178, 1181 (4th Cir. 1989)). The fact that the order granting summary judgment is on appeal does not affect the application of *res judicata* to that ruling. *Machado*, at *7 (citing *Guinness PLC v. Ward*, 955 F.2d 875, 898 (4th Cir. 1992) ("[I]t is … the majority position among the federal court … that the existence of a pending appeal does not render a judgment unenforceable nor suspend its preclusive effects absent a party obtaining a stay from either the rendering or enforcing court.")).

The Plaintiff herself stated in her Motion to Consolidate that she filed the 2015 Lawsuit in case the merits of the FMLA claim were not reached in the 2014 Lawsuit. It is undisputed that the FMLA claim was adjudicated on the merits in the order granting summary judgment to the Defendant. (2014 Lawsuit, Dkt. No. 94 at 22-24 of 24.) Liberally construed, the 2015 Complaint also states a cause of action for violation of the ADA. Both of these claims were dismissed in the 2014 Lawsuit. The undersigned recommends that the 2015 Lawsuit for violation of the FMLA and violation of the ADA be dismissed because it is duplicative of the 2014 Lawsuit and because the claims are barred by *res judicata*. [5]

---

[5] In the instant 2015 case, the Complaint and the Plaintiff's Motion to Consolidate do not raise a retaliation claim at all. (2015 Lawsuit, Dkt. Nos. 1 and 24.) The Response in Opposition mentions that she was fired for filing the EEOC complaint. (2015 Lawsuit, Dkt. No. 26 at 5-6 of 7; 2015 Lawsuit, Dkt. No. 30 at 5-6 of 7.) This theory of retaliation was foreclosed to the Plaintiff in the 2014 Lawsuit because it was raised too late, after all deadlines in the scheduling order had passed. (*See* 2014 Lawsuit, Order granting summary judgment, Dkt. No. 94 at 13-17 of 24.) The Plaintiff has not sought to amend her 2015 Complaint at this time. The undersigned notes that the Response in Opposition was filed within the time period in Rule 15(a) of the Federal Rules of Civil Procedure to amend as a matter of course. Rule 15(a)(1)(B) allows

11

## 4.  CONCLUSION

For the foregoing reasons, the undersigned recommends that the Defendant's Motion to Dismiss/Amended Motion to Dismiss (Dkt. No. 18; Dkt. No. 27) be **GRANTED**.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 28, 2016
Charleston, South Carolina

**The parties' attention is directed to the important notice on the following page.**

---

amendment as of course within twenty-one (21) days after service of a motion under Rule 12(b). Plaintiff filed her first Response in Opposition within twenty-one (21) days of the Defendant's filing of its Motion to Dismiss under F.R.Civ.P. 12(b). *See* 2015 Lawsuit, Dkt. Nos. 18 and 25.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).